UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-cv-23941-DPG

BRIDGEHEAD CONTAINER
  SERVICES LTD.,

      Plaintiff,

v.

ANGEL DONES, JR.,

      Defendant.
_____

**DEFENDANT'S COMPLIANCE WITH THE COURT'S ORDER [DE 65] OF AUGUST 21, 2018, AS MODIFIED ON AUGUST 30, 2018, [DE 67], REQUIRING SPECIFIC REFERENCES TO THE TRANSCRIPT OF IVAN RICHARD KRISSEL'S DEPOSITION WHICH SUPPORT DEFENDANT'S ASSERTION <u>THAT THERE ARE MATERIAL FACTS IN DISPUTE</u>**

      The Defendant, ANGEL DONES, JR., by and through his undersigned attorney, hereby complies with the Order [DE 65] entered by the Court on August 21, 2018, as modified on August 30, 2018, [DE 67], requiring Defendant to provide the Court with specific references to the transcript of the deposition of Ivan Richard Krissel [a.k.a. Richard Krissel] which support Defendant's assertion that there are material facts in dispute.

      Therefore, Defendant offers from the deposition of Richard Krissel the following detailed additional support to Defendant's Response [DE 48] in Opposition to [DE 42] Plaintiff's Motion for Summary Judgment and as additional support to Defendant's Motion to Strike [DE 49] Plaintiff's Statement of Undisputed Material Facts (Statement of Facts), etc. [DE 41], and to Defendant's Motion to Strike [DE 50] the Declaration of Brian R. Bibby:

[continued on next page]

Page **1** of **12**

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

A.       **Paragraphs 17, 18 and 19 of Plaintiff's Statement of Facts are DISPUTED:**

Plaintiff would want the Court to believe that the following paragraphs of its Statement of Facts establish that Mr. Dones, Jr. stole Plaintiff's containers:

> "17.  When confronted about shipping containers missing from Southeastern's depot, Defendant Dones, Jr. admitted responsibility for missing containers. (Ex. B, Krissel Depo. p. 5:1-17; Ex. C, Verified Compl, ¶ 21).
>
> 18.  Defendant Dones, Jr. intentionally, and without authorization, removed shipping containers, including Bridgehead's, from Southeastern's depot and sold them keeping the proceeds for himself. (Ex. A, Bibby Decl., ¶¶ 11, 13; Ex. C, Verified Compl., 16).
>
> 19.  Defendant Dones, Jr. stole shipping containers that were being stored at Southeastern's depot for Southeastern's customers, including Bridgehead's containers. (Ex. A, Bibby Decl., ¶ 11; Ex. B, Krissel Depo. Ex. C, p. 17:12-22; Verified Compl., ¶¶ 16, 18)."

It is clear from the citations listed at the end of each of the foregoing paragraphs that Plaintiff is not making assertions of material fact based upon personal knowledge but rather, Plaintiff relies on (a) the generalizations asserted by Mr. Krissel at his deposition, which were based on leading questions and that have no probationary value and, (b) on the self-serving statements made by Mr. Krissel in the Complaint that he filed in the business liquidation proceedings for Southeastern in Miami-Dade County Circuit Court in his to-date successful attempt to shield himself from personal liability for his participation in the gross mismanagement of Southeastern, which was directly responsible for safeguarding Plaintiff's containers.

However, as seen from the following excerpts of the deposition of Mr. Krissel taken by the Plaintiff in this case, Mr. Krissel contradicted each of those assertions and testified that <u>Mr. Dones, Jr. has never admitted to stealing any containers</u> – much less Plaintiff's containers:

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

```
10 Q. Is that what Angel Dones, Jr. said, he
11 was responsible for all containers?
12 A. Since he was -- he said basically --
13 and I can't -- that he is responsible for all
14 containers, sales and that he was responsible
15 for all containers. So that included the
16 missing containers if he's responsible for the
17 containers.
```
Krissel Depo, pg. 5:10-17. (emphasis ours).

```
18 Q. ... Did Angel Dones, Jr. ever, in
19 addition to what he said at this meeting, admit
20 that he was responsible for the missing
21 containers at any other time?
22 A. Not that I'm aware of.
23 Q. Now, did you ever ask him whether he
24 was responsible for the missing containers?
25 A. No.
```
Krissel Depo, p. 5:18-25.

```
22 Q. Now, at that initial meeting with
23 Triton you said that's the one and only time
24 where you heard Junior [Defendant] say that, I'm
   responsible
25 for all the containers, correct?
1 A. Correct.
2 Q. He never said, I'm responsible for the
3 stolen containers, correct?
4 A. No. He never said that.
5 Q. He never said, I stole the containers,
6 correct?
7 A. Never.
```
Krissel Depo, pgs. 47:22-25, 48:1-7. (emphasis ours).

```
25 … Did anyone from Southeastern confront

1 Angel, Jr. about these further missing
2 containers?
3 A. No. We asked him to resign. I don't
4 know if his father asked him or his brother
5 asked him, so I have no idea. On their side.
6 As far as me, I did not ask him. I wanted him
7 gone.
```
Krissel Depo, pgs. 16:25, 17:1-7. (emphasis ours).

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

**B.      Paragraphs 20 and 21 of Plaintiff's Statement of Facts are DISPUTED:**

Plaintiff would want the Court to believe that the following paragraphs of its Statement of Facts establish that Mr. Dones, Jr. attempted to hide the alleged theft of Plaintiff's containers:

> "20.  Defendant Dones, Jr. attempted to hide his theft of shipping containers being stored at Southeastern's depot by offering to purchase from Southeastern's customers, like Bridgehead, containers that Southeastern's customers, like Bridgehead, mistakenly believed were still present at Southeastern's depot. (Ex. A, Bibby Decl., ¶ 12; Ex. C, Verified Compl., ¶ 18).
>
> 21.  Such an attempt to cover up his theft was made by Defendant Dones, Jr. on August 23, 2017 when he offered to purchase from Bridgehead several containers that Bridgehead later learned were, in fact, missing from Southeastern's depot. (Ex. A, Bibby Decl., ¶ 12 )."

As a starting point, it is significant that Plaintiff does not argue or assert that Mr. Dones, Jr. "attempted to hide his theft" of Plaintiff's containers. Indeed, Plaintiff could not argue or assert that because there is no evidence that Mr. Dones, Jr. stole any containers, much less Plaintiff's containers.

Instead, Mr. Krissel's deposition testimony shows a blatant disregard by Southeastern of its duty to safeguard Plaintiff's (and others') containers, as detailed further below, which resulted in containers being stolen or damaged and therefore, being "purchased" after the fact by Southeastern in order to comply with its duty of care to its customers, thereby explaining away Plaintiff's spurious effort to show that Mr. Dones, Jr.'s purchases were made for nefarious purposes, as opposed to being made as part and parcel of his duties as an employee of Southeastern.

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

Additionally, Mr. Krissel's deposition testimony also makes it clear that there are significant material facts that contradict Plaintiff's assertions that Mr. Dones, Jr.'s purchases of containers from Southeastern's customers (like Bridgehead) were made to hide his thefts and instead the facts show that those purchases were often made to cover-up the fact that Southeastern had long before stopped carrying insurance for the containers it stored for its customers and therefore, had no choice but to "buy" any containers that were stolen or damaged while stored at Southeastern's depo to avoid breaching its storage depot agreements with its customers.

In addition, Mr. Krissel's testimony established that Southeastern routinely purchased containers from its customers – including Plaintiff - to be later resold by Southeastern after repurposing them for uses other than to carry cargo.

Moreover, as Mr. Krissel testified, Mr. Dones, Jr. was running his container-purchase-and-sales company (Eastern Atlantic Sales, Inc., [also dba Gulfstream Containers]) from within Southeastern's property and kept an inventory of Eastern Atlantic Sales' containers at Southeastern's depot.

Here is what Mr. Krissel admitted to at his deposition regarding the subject of container purchases:

```
22 Q. During the last several years
23 Southeastern stored containers off of its main
24 property on other lots, correct?
25 A. Correct.

1 Q. One of those lots was near a
2 construction site off the turnpike and that site
3 was unsecured, correct?
4 A. I don't know if it was unsecured or
```

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

```
 5 not. It may have been.
…
15 … we had
16 two separate lots. One that was owned by
17 Lopefra that we were leasing. I think for a
18 short period of time we were leasing from a
19 company called -- from Lowell Dunn, the Lowell
20 Dunn family.
21 Q. One of those sites or maybe both of
22 them, you suffered -- or not you, but
23 Southeastern suffered thefts of containers,
24 correct?
25 A. Correct.
```
Krissel Depo, pgs. 34:22-25, 35:1-5, 35:15-25. (emphasis ours).

```
19 Q. So you were asked about the lots which
20 were rented from other companies off-site from
21 Southeastern. What kind of control, if any, of
22 inventory was there at those lots?
23 A. I don't know that there was any.
```
Krissel Depo, pg. 52:19-23. (emphasis ours).

```
23 Q. Did Southeastern have guards to
24 prevent somebody from just pulling up and taking
25 out?

 1 A. My understanding is, yes.
 2 Q. Were there guards at other lots?
 3 A. That I don't know.
```
Krissel Depo, pg. 53:23-25, 54:1-3.

```
10 … we were always starved for
11 cash. And then I was told, Oh, we've got
12 receivables from customers.
13 We'd get a check from a customer and
14 it would be short. They'd say, Oh, well, that's
15 because we owed this customer money for
16 containers purchased.
17 Now, earlier -- I don't know if it was
18 a year before that, we were still in cash -- we
19 still had cash problems. George Dones and I --
20 or George said, We're not going to purchase any
21 more containers except what we need.
22 Then all of a sudden we find -- I find
23 that containers are being purchased and offset
```

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

24 **our receivables.** It was just -- I was livid.
25 There was no -- at that point I had no idea why

1 we were buying so many containers.
2 Q. When did you find this out about
3 buying containers?
4 A. Well, this could have been a year ago.
5 I don't know the exact date. But George said,
6 We're not buying containers anymore.
7 And I believe he must have told his
8 brother. I don't know. But we weren't going to
9 pay to buy containers.
10 So this was -- I don't know how long
11 ago **I found out that receivables were being**
12 **shorted. And they were being shorted because we**
13 **were buying containers.** I had complained. I
14 believe I complained to George that I thought we
15 weren't buying containers anymore.
16 Q. What did George say?
17 A. Shrugged his shoulders.
18 Q. **So as of August 2016 you knew that**
19 **there was something going on with containers by**
20 **forgiving charges?**
21 A. **No. At that date I did not know. I**
22 **thought he was just -- I thought he was**
23 **selling -- because we still had container sales.**
24 **And we were using containers in -- we were**
25 **modifying containers for generators and water**

1 **equipment. So I knew we had to have containers.**
Krissel Depo, pg. 24:10-25, 25:1-25, 26:1. (emphasis ours).

15 Q. **Now, you talked about buying**
16 **containers against receivables. That's**
17 **something that Southeast routinely did in its**
18 **purchase of containers, correct?**
19 A. **You know, I'm not sure. All I know is**
20 **I was told that -- George and I discussed it a**
21 **while back and said we weren't going to buy**
22 **anymore containers**…

1 Q. **Well, prior to you discovering there**
2 **were missing containers, over the years**
3 **Southeast purchased containers? You told us you**
4 **purchased them for generators, for water,**

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

```
5  sometimes you buy and modify them, correct?
6  A. That's correct.
7  Q. And the method you used in order to
8  save your cash flow was to offset the purchase
9  price against receivables, correct?
10 A. You know, I don't know that that's --
11 that was not our -- that was not my policy for
12 the company. Well, I was not there for running
13 the operations or the day-to-day bookkeeping and
14 accounting. Because that short-circuits the
15 accounting system.
```
Krissel Depo, pgs. 37:15-22, 38:1-15. (emphasis ours).

```
4  Q. Have you since learned that Southeast
5  has been purchasing containers in this fashion
6  for many, many years?
7  A. No. I did not learn that. I didn't
8  know that they were doing that for many, many
9  years. But it can be done. But when you're
10 told that we're not buying containers, you don't
11 continue to do it.
12 Q. Well, you told who? You didn't tell,
13 Junior [Defendant].
14 A. George Dones and I discussed that and
15 George was supposed to tell Angel that we're not
16 going to buy any more containers. Now, whether
17 that's done cash wise or offsetting receivables,
18 that means you don't buy containers unless it's
19 really authorized for a specific job or an
20 order.
21 Q. So that was -- when you confronted
22 George Dones about it, he just shrugged his
23 shoulders?
24 A. Well, what do you mean, confronted him
25 about what?

1  Q. About, Why are we buying more
2  containers?
3  A. Yes. I can -- you know, I can -- yes.
4  Q. Do you know whether he ever
5  communicated to Dones, Jr. -- to Angel, Jr. that
6  they weren't -- you didn't want them to continue
7  buying containers?
8  A. Do I know whether George did it or
9  not? No. I do not.
```

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

```
10 Q. So you don't know whether Dones,
11 Jr. -- whether Angel, Jr. was ever told not to
12 continue buying containers, correct?
13 A. I do not know. I don't have that
14 knowledge, specific knowledge.
```
Krissel Depo, pgs. 39:4-25, 40:1-14. (emphasis ours).

```
18 Q. Who is Natalie?
19 A. Natalie is Angel M. Dones' daughter.
20 Q. And is she -- is her last name
21 Montenegro?
22 A. No.
23 Q. What's her last name now?
24 A. Dones.
25 Q. So this is Angel, Jr.'s daughter.

1 Does she -- do you know where she is now? Is
2 she still in the South Florida area?
3 A. I believe she is.
4 Q. And what involvement did she have, if
5 any, selling containers?
6 A. She was doing special projects. She
7 was to bring --
8 Q. What does that mean?
9 A. For example, she was trying to sell
10 these pop up boxes. They were containers. And
11 they would be modified at Southeastern. And so
12 she would have to sell containers -- she
13 would -- the container was part of the special
14 project. I guess my thought there was, I don't
15 want her selling containers.
```
Krissel Depo, pgs. 6:18-25, 7:1-15. (emphasis ours).

```
1 Q. In your document production we've got
2 some handwritten notes, and the first page I
3 want to look at, down in the bottom right is
4 Krissel 365.
5 MR. SIMMS: Let's mark that as
6 Exhibit 2.
7 (Handwritten notes was marked as
8 Exhibit 2 for identification.)
9 Q. When did you make this note -- these
10 notes and what meeting is this referring to?
11 A. These notes were made after the
12 meeting with Triton in August, August 10th or
```

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

13 **11th, something like that.** I don't know that we
14 had a meeting but these were the bullet points
15 that I wanted to make sure that we covered.
16 **These may have just been notes that came out of**
17 **my head.**
Krissel Depo, pg. 6:1-17.

23 Q. Then the next bullet point below
24 Catalina: **Angel has put aside containers for**
25 **sale. These are not his containers.**

1 **Tell me what the details are on that**
2 **note.** How did you know about this and that he
3 had put aside containers for sale through a
4 third party?
5 A. **Well, he had set up a company --**
6 Q. Yes.
7 A. **-- and was competing with us while**
8 **working for us. I found out about that after**
9 **the fact.**
10 Q. **Was that company Eastern Atlantic?**
11 A. **I believe there were several companies**
12 **that he had.**
Krissel Depo, pgs. 8:23-25, 9:1-12. (emphasis ours).

23 Q. **How did you know that Angel had put**
24 **aside containers for sale through a third party?**

1 A. I was -- **after our meeting I was**
2 **trying to get to the bottom of this, of what was**
3 **going on and found out that he had containers of**
4 **his own at our yard. They called it Angel's**
5 **Inventory or Angel's containers.** I was
6 flabbergasted at the time that I heard that.
7 Q. Let's mark what is in the papers
8 there, this would be Exhibit 4, down at the
9 bottom right-hand corner Krissel 633, which has
10 your handwriting up at the top "Angel's
11 Inventory."
12 (Southeastern Trailer & Container
13 Repair document was marked as Exhibit 4 for
14 identification.)
15 Q. **So looking at Exhibit 4, is that the**
16 **list of Angel's inventory you just talked about?**
17 A. **Yes. In the document it shows -- it**

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

```
18 says in the left-hand top -- not top -- yes, top
19 left-hand corner it says: All units in yard for
20 Angel, Jr.
21 Then it says: Angel, Jr.
22 Q. So what is it about learning this that
23 flabbergasted you?
24 A. That he had his own containers in our
25 yard, that he was working for us, and he is

1 selling containers on his own somewhere and
2 keeping the money. That flabbergasted me.
```
Krissel Depo, pgs. 9:23-24, 10:1-25, 11:1-2. (emphasis ours).

```
22 Q. Now, it's clear to you from Exhibit --
23 I forgot what number it is, it's Krissel 570,
24 the screenshot of the Gulfstream Container web
25 page.

1 A. Right.
2 Q. From that exhibit it's clear to you
3 that from Southeastern -- while he was at
4 Southeastern, Junior [Defendant] is conducting
  business for
5 this other company that he has on the side,
6 correct?
7 A. That's my conclusion, that he's got
8 his own inventory sitting in our yard. He has a
9 business where he's buying and selling
10 containers. So that was my conclusion.
…
16 Q. And as to the inventory that he kept
17 at Southeastern, the exhibit you showed us or
18 the exhibit that we had is just the inventory as
19 of that date, correct?
20 I believe it was September 27th.
21 A. I believe that's correct…
```
Krissel Depo, pgs. 42:22-25, 43:1-21. (emphasis ours).

    **C.**    Defendant incorporates by reference herein the arguments made in his Motion to Strike [DE 49] Plaintiff's Separate Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment and his Motion to Strike [DE 50] the Declaration of Brian R. Bibby in Support of Plaintiff's Motion for Summary Judgment, as though fully set forth herein.

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com

  **D.**  Defendant further incorporates by reference Exhibits "A" and "B" to his Response [DE 48] in Opposition re [42] Plaintiff's Motion for Summary Judgment, etc. (Transcript of Deposition of Ivan Richard Krissel and Affidavit of Defendant, Angel Dones, Jr., respectively), as though fully set forth herein.

  WHEREFORE, Defendant respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment.

  **DATED:**  September 4, 2018.

                Donet, McMillan & Trontz, P.A.

                By: /s/ David A. Donet, Jr.
                  David A. Donet, Jr., Esq.
                  Attorney for Angel Dones, Jr.

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that on September 4, 2018, undersigned counsel filed the foregoing Defendant's Compliance With the Court's Order [DE 65] of August 21, 2018, etc., with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing (NEF) to all counsel of record.

                **Donet, McMillan & Trontz, P.A.**

                By: /s/ David A. Donet, Jr.
                  David A. Donet, Jr., Esq.
                  Attorney for Angel Dones, Jr.
                  Florida Bar No.: 129810
                  3250 Mary Street, Suite 406
                  Coconut Grove, Florida 33131
                  Telephone: (305) 444-0030
                  Fax: (305) 444-0039
                  Email: donet@dmt-law.com
                  Email: paralegals@dmt-law.com

Page **12** of **12**

**Donet, McMillan & Trontz, P.A.**
Attorneys at Law
Suite 406, Continental Plaza, 3250 Mary Street, Coconut Grove, FL 33133
• Phone 305-444-0030 • Fax 305-444-0039 •
www.dmt-law.com